Evan J. Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*
_____

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANK FERREIRO, on behalf of himself and all others similarly situated, | Case No.: |
| Plaintiff, | CLASS ACTION |
| vs. | CLASS ACTION COMPLAINT FOR: |
| BARNES & NOBLE, INC., LEONARD RIGGIO, GEORGE CAMPBELL JR., MARK D. CARLETON, SCOTT S. COWEN, WILLIAM T. DILLARD II, AL FERRARA, PAUL B. GUENTHER, PATRICIA L. HIGGINS, IRWIN D. SIMON, and KIMBERLY A. VAN DER ZON, | (1) Violation of § 14 (d) and 14(e) of the Securities Exchange Act of 1934 (2) Violation of § 20(a) of the Securities Exchange Act of 1934 (3) Breach of Fiduciary Duties |
| Defendants. | DEMAND FOR JURY TRIAL |

Plaintiff Frank Ferreiro ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder class action on behalf of themselves and all other public stockholders of Barnes & Noble, Inc. ("Barnes & Noble" or the "Company"), against Barnes & Noble, and the Company's Board of Directors (the "Board" or the "Individual Defendants, and collectively with Barnes & Noble, the "Defendants"), for violations of Sections

- 1 -

14(e), 14(d) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), for breaches of fiduciary duty as a result of Defendants' efforts to sell the Company as a result of an unfair process for an unfair price, and to enjoin a Tender Offer currently scheduled to expire on August 6, 2019 in which affiliates of Elliott Advisors (UK) Limited, Chapters HoldCo Inc. ("Parent") and Chapters Merger Sub, Inc. ("Merger Sub," and collectively with Parent, "Chapters") will acquire each outstanding share of Barnes & Noble common stock for $6.50 per share in cash (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a June 24, 2019 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the Amended and Restated Agreement and Plan of Merger (the "Merger Agreement").

3.      On July 9, 2019, Barnes & Noble filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "14D-9") with the Securities and Exchange Commission (the "SEC") in support of the Proposed Transaction.

4.      Defendants breached their fiduciary duties to the Company's shareholders by agreeing to the Proposed Transaction which undervalues Barnes & Noble and is the result of a flawed sales process.  Post-closure, Barnes & Noble shareholders will be frozen out of seeing the return on their investment of any and all future profitability of Barnes & Noble.

5.      Further, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange large, illiquid blocks of Company stock for massive payouts, in addition to receiving cash in exchange for all outstanding and unvested options and/or other types of restricted stock units.  Moreover, certain Directors and other insiders will also be the recipients of lucrative change-in-control agreements, triggered upon the termination of their employment as a consequence of the consummation of the Proposed Transaction.   For example, the Company's Chairman, Defendant Riggio, stands to pocket over $91 million dollars from his shares. Such large paydays upon the consummation of the Proposed Transaction, have clearly tainted the motivations of the Board in approving it.

6.      Finally, in violation of sections 14(e) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and their fiduciary duties, Defendants caused to be filed the materially deficient 14D-9 on July 9, 2019 with the SEC in an effort to solicit stockholders to tender their Barnes & Noble shares in favor of the Proposed Transaction.  The 14D-9 is materially deficient and deprives Barnes & Noble stockholders of the information they need to make an intelligent, informed and rational decision of whether to tender their shares in favor of the Proposed Transaction.  As detailed below, the 14D-9 omits and/or misrepresents material information concerning, among other things: (a) the Company's financial projections; (b) the sales process of the Company; and (b) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinions provided by the Company's financial advisors Evercore Group L.L.C. ("Evercore") and Guggenheim Securities ("Guggenheim").

7.      Absent judicial intervention, the merger will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

## PARTIES

8.      Plaintiff is an individual citizen of the Commonwealth of Pennsylvania.  He is, and at all times relevant hereto, has been a Barnes & Noble stockholder.

9.      Defendant Barnes & Noble is a retail bookseller, sells content, digital media, and educational products in the United States. It operates through two segments, B&N Retail and NOOK. The Company is incorporated in the state of Delaware and has a principal place of business located at 122 Fifth Avenue, New York, New York 10011.  Barnes & Noble common stock is publicly traded on the NYSE under the ticker symbol "BKS."

10.     Defendant Leonard Riggio ("Riggio") has been a member of the Barnes & Noble Board of Directors at all relevant times.  In addition, Riggio is Chair of the Board.

11.     Defendant C. David Kikumoto ("Kikumoto") has been a member of the Barnes & Noble Board of Directors at all relevant times.  In addition, Kikumoto has served as the Chairman of the Company Board of Directors at all relevant times.

12.     Defendant George Campbell, Jr. ("Campbell") has been a member of the Barnes & Noble Board of Directors at all relevant times.

13.     Defendant Mark D. Carleton ("Carleton") has been a member of the Barnes & Noble Board of Directors at all relevant times.

14.     Defendant Scott S. Cowen ("Cowen") has been a member of the Barnes & Noble Board of Directors at all relevant times.

15.     Defendant William T. Dillard II ("Dillard") has been a member of the Barnes & Noble Board of Directors at all relevant times.

16.     Defendant Al Ferrara ("Ferrara") has been a member of the Barnes & Noble Board of Directors at all relevant times.

17.     Defendant Paul B. Guenther ("Guenther") has been a member of the Barnes & Noble Board of Directors at all relevant times.

18.     Defendant Patricia L. Higgins ("Higgins") has been a member of the Barnes & Noble Board of Directors at all relevant times.

19.     Defendant Irwin D. Simon ("Simon") has been a member of the Barnes & Noble Board of Directors at all relevant times.

20.     Defendant Kimberly A. Van Der Zon ("Van Der Zon") has been a member of the Barnes & Noble Board of Directors at all relevant times.

21.     Defendants identified in ¶¶ 10-20 are collectively referred to as the "Individual Defendants."

22.     Non-Party Parent is a Delaware corporation and a party to the Merger Agreement.

23.     Non-Party Merger Sub is a Delaware Corporation formed for the purpose of effectuating the Merger Agreement.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

25.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Barnes & Noble' principal place of business is located in this District, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

**CLASS ACTION ALLEGATIONS**

27.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Barnes & Noble common stock who are being and will be harmed by Defendants' actions described herein (the "Class").  The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

28.     This action is properly maintainable as a class action because:

a.  The Class is so numerous that joinder of all members is impracticable.  As of July 5, 2019, there were more than 73 million common shares of Barnes & Noble' outstanding.  The actual number of public stockholders of Barnes & Noble will be ascertained through discovery;

b.  There are questions of law and fact which are common to the Class, including *inter alia*, the following:

i.  Whether Defendants have violated the federal securities laws;

ii.  Whether Defendants made material misrepresentations and/or omitted material facts in the 14D-9; and

iii.  Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

c.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f.  Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

g.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

29.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Barnes & Noble and owe the Company the duties of due care, loyalty, and good faith.

30.     By virtue of their positions as directors and/or officers of Barnes & Noble, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Barnes & Noble to engage in the practices complained of herein.

31.     Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

CLASS ACTION COMPLAINT

a. act with the requisite diligence and due care that is reasonable under the circumstances;

b. act in the best interest of the company;

c. use reasonable means to obtain material information relating to a given action or decision;

d. refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

e. avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

f. disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

32.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Barnes & Noble, are obligated to refrain from:

    a.     participating in any transaction where the directors' or officers' loyalties are divided;

    b.     participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public shareholders; and/or

    c.     unjustly enriching themselves at the expense or to the detriment of the Company or its shareholders.

33.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Barnes & Noble, Plaintiff and the other public shareholders of Barnes & Noble, including their duties of loyalty, good faith, and due care.

34.     As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Barnes & Noble common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

35.     Barnes & Noble together with its subsidiaries, provides air medical emergency transport services and systems in the United States.  The company operates in the Air Medical Services (AMS), Tourism, and United Rotorcraft (UR) segments.

36.     The Company's AMS segment provides air medical transportation services to the general population as an independent service, as well as to hospitals and other institutions under operating agreements.  Its services include medical care, aircraft operation and maintenance, communications and dispatch, and medical billing and collections.  As of December 31, 2016, this segment's aircraft fleet consisted of 369 company-owned aircraft and 76 leased aircraft, as well as 49 aircraft owned by AMS customers and operated by the company under contracts with them.

37.   The Company's Tourism segment provides aerial tours and charter flights, primarily focusing on Grand Canyon and Hawaiian Island tours.  It markets its tours through Websites, as well as through various channel partners, such as online booking companies, hotels, resorts, and cruise operators.  This segment operates 63 helicopters and 2 fixed wing aircraft under three Part 135 Air Carrier Certificates.

38.   Barnes & Noble' UR segment designs, manufactures, installs, and certifies multi-mission interiors, and other aerospace and medical transport products for domestic and international customers.  This segment also offers quality assurance and certification services.

39.   Barnes & Noble has shown sustained solid financial performance.  For example, in its financial report for the fourth quarter 2016, the Company reported a revenue increase of 9.2%, from $272.4 million to $297.5 million.  Additionally, the Company showed an increase in non-GAAP Adjusted EBITDA from continuing operations of 1.2%.

40.   Speaking on these positive results, Company Chairman and Defendant Todd spoke positively about the Company's financial plan and its positive implementation, stating, "Patient transports rebounded in the fourth quarter, increasing 11.1% in total and 1.5% on a same-base basis as the Company benefited from changes implemented towards the end of the third quarter and early in the fourth quarter and from more normal weather.  We remain focused on driving shareholder value by improving the utilization of the Company's assets, increasing its net revenue per transport through improvements in the Company's revenue cycle operations and increasing the percent of commercial claims that are in network, growing the Company's air medical footprint, and increasing the revenue and profitability of the Tourism operations."

41.   These recent financial results are just the latest results showcasing a trend of financial success for Barnes & Noble, as evidenced by the Company's second quarter 2016 financials, released on August 4, 2016.  Notable highlights from these financial results included a revenue increase of 11.0% from $263.6 million to $292.6 million and an increase of 7.0% in EBITDA from continuing operations, from $71.2 million to $76.2 million.  Speaking on these positive results, Defendant Todd commented on the Company's positive upward trajectory affirming that the Company "continued to grow".

CLASS ACTION COMPLAINT

42. Despite this upward trajectory and glowing pronouncements by management, success, the Individual Defendants have caused Barnes & Noble to enter into the Proposed Transaction with American Securities, thereby depriving Plaintiff and other public stockholders of the Company the opportunity to reap the benefits of Barnes & Noble' present and future success.

***The Proposed Transaction***

43. On June 7, 2019, Barnes & Noble issued a press release announcing that Barnes & Noble had agreed to be acquired by Elliott in the Proposed Transaction. The press release states in relevant part:

> NEW YORK & LONDON--(BUSINESS WIRE)--Barnes & Noble, Inc. (NYSE:BKS, "Barnes & Noble") announces today that it has entered into a definitive agreement to be acquired by funds advised by Elliott Advisors (UK) Limited ("Elliott") for $6.50 per share in an all-cash transaction valued at approximately $683 million, including the assumption of debt.
>
> Elliott's acquisition of Barnes & Noble, the largest retail bookseller in the United States, follows its June 2018 acquisition of Waterstones, the largest retail bookseller in the United Kingdom. James Daunt, CEO of Waterstones, will assume also the role of CEO of Barnes & Noble following the completion of the transaction and will be based in New York.
>
> The $6.50 per share purchase price represents a 43% premium to the 10-day volume weighted average closing share price of Barnes & Noble's common stock ended June 5, 2019, the day before rumors of a potential transaction were reported in the media.
>
> The announced transaction with Elliott is the culmination of an extensive Strategic Alternative Review conducted by the Special Committee of the Barnes & Noble Board of Directors, which was announced on October 3, 2018. The Board of Directors of Barnes & Noble unanimously approved the transaction and recommend the transaction to Barnes & Noble shareholders. Leonard Riggio, the Founder and Chairman of Barnes & Noble, has also entered into a voting agreement in support of the transaction.
>
> Barnes & Noble serves 627 different communities across all 50 states, where it remains the #1 bookseller in the United States. Elliott seeks to build upon this strong foundation as it addresses the significant challenges facing the bricks and mortar book retail space, applying a model that successfully turned around Waterstones over the past decade.
>
> Following the close of the transaction, Elliott will own both Barnes & Noble and Waterstones, and while each bookseller will operate independently, they will share a common CEO and benefit from the sharing of best practice between the companies. Waterstones has successfully restored itself to sales growth and sustainable profitability, based on a strategy of investment in their store estate and the empowerment of local bookselling teams. Under Daunt's leadership and Elliott's stewardship, this commitment to bookselling excellence will strengthen the ability of both companies to navigate with success a rapidly changing retail landscape.

With respect to today's announcement, Leonard Riggio, Founder and Chairman of Barnes & Noble, stated, "We are pleased to have reached this agreement with Elliott, the owner of Waterstones, a bookseller I have admired over the years. In view of the success they have had in the bookselling marketplace, I believe they are uniquely suited to improve and grow our company for many years ahead. I am also confident that James Daunt has the leadership ability and experience necessary to lead this great organization. I will do everything I can to help him make the transition smooth. Having been the leader of Barnes & Noble for 54 years, I have had the privilege of working with the very best people in all the world of bookselling, including our great store managers and booksellers, who work in our stores. It is they who have made Barnes & Noble the #1 most reputable retailer in America. My profound thanks, as well, to the entire publishing world, with whom we have shared a great relationship over the years, and the many suppliers who have provided vital services. Finally, to our tens of millions of wonderful customers and Members, it has been a privilege to serve them."

In anticipation of his new CEO role at Barnes & Noble, James Daunt added, "I look forward greatly to working with the booksellers at Barnes & Noble. Physical bookstores the world over face fearsome challenges from online and digital. We meet these with investment and with all the more confidence for being able to draw on the unrivalled bookselling skills of these two great companies. As a place in which to choose a book, and for the sheer pleasure of visiting, we know that a good bookstore has no equal. I thank Mr. Riggio for his confidence, and I am grateful to Elliott for their commitment to support the continued transformation at Waterstones, and now also the same at Barnes & Noble."

Paul Best, Portfolio Manager and Head of European Private Equity at Elliott, added, "Our investment in Barnes & Noble, following our investment last year in Waterstones, demonstrates our conviction that readers continue to value the experience of a great bookstore. We would like to acknowledge the contributions of Founder and Chairman Leonard Riggio and his team for creating the leading bookstore company in the United States. We look forward to working with James Daunt and the Barnes & Noble community of readers, members and booksellers as they start an exciting new chapter."

The transaction is subject to customary closing conditions, including the receipt of regulatory and stockholder approval, and is expected to close in the third quarter of 2019. The merger agreement provides for the acquisition to be consummated through a merger structure. However, the parties expect to amend the agreement to utilize a tender offer structure, which is expected to reduce the time to closing by a number of weeks.

Dividend

Barnes & Noble also announced that it has declared a quarterly cash dividend of $0.15 per share, payable on August 2, 2019 to stockholders of record at the close of business on July 5, 2019.

Fiscal 2019 Year-End Earnings Announcement

Barnes & Noble separately announced that it will be reporting its fiscal 2019 fourth quarter and year-end financial results on June 19, 2019.

Advisors

Evercore is acting as financial advisor and Baker Botts L.L.P. is acting as legal advisor to the Special Committee of Barnes & Noble and Guggenheim Securities LLC is acting as financial advisor and Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal advisor to the Board of Directors of Barnes & Noble. Credit Suisse Securities L.L.C. is acting as financial advisor and Debevoise & Plimpton LLP is acting as legal advisor to Elliott.

**The Inadequate Merger Consideration**

44.     Significantly, analyst expectations, the Company's strong market position, extraordinary growth, and positive future outlook, establish the inadequacy of the merger consideration.

45.     First, the merger consideration is well below the Company's 52-week high of $7.81.

46.     Next, significant shareholders of the Company believe that the deal undervalues the Company.  For example, Richard Schottenfeld, whose affiliates own approximately 3.5% of the outstanding shares, and who has encouraged management to seek a sale, filed a Schedule 13D on June 13, 2019, stating, in part, "The Reporting Persons are of the view that the Company is worth considerably more than the agreed-upon sale price, and believe that the special committee, including its Chairman, Mark Carlton, has failed in its duty to maximize value for shareholders. In light of recent press reports and market speculation of various parties seeking to collaborate for purposes of submitting a topping bid, the Reporting Persons strongly urge the special committee to reevaluate its approach and afford all interested parties the ability to communicate and coordinate their efforts for the purpose of submitting a superior bid that better represents the fair value of the Company. Further to the foregoing, the Reporting Persons and their representatives may engage in discussions with members of management and/or the board of directors of the Company, other current or prospective shareholders, industry analysts, potential bidders, investment and financing professionals and other third parties regarding a sale of the Company."

47.     Moreover, post-closure, Barnes & Noble stockholders will be completely cashed out from any and all ownership interest in the Company, forever foreclosing them from receiving any future benefit in their investment as Barnes & Noble continues on its upward financial trajectory.

48.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Elliott at the expense of Barnes & Noble and Barnes & Noble

stockholders, which clearly indicates that Barnes & Noble stockholders were not an overriding concern in the formation of the Proposed Transaction.

***Potential Conflicts of Interest***

49.     The deal itself was likely also tainted by the self-interest of the Individual Defendants.

50.     For example, certain employment agreements with several Barnes & Noble officers or directors are entitled to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them at the very least, hundreds of thousands of dollars, compensation not shared by Barnes & Noble' common stockholders.

51.     The following table sets forth the Golden Parachute compensation for certain Barnes & Noble directors and officers, as well as their estimated value payable:

| Name(1) | Cash ($)(2) | Equity ($)(3) | Perquisites/ Benefits ($)(4) | Total ($) |
|---|---|---|---|---|
| ***Named Executive Officers*** | | | | |
| Leonard Riggio | — | — | — | — |
| Allen W. Lindstrom | 3,233,836 | 1,358,598 | 44,009 | 4,636,443 |
| Mary Ellen Keating | 2,735,694 | 509,477 | 19,776 | 3,264,947 |
| William E. Wood | 2,947,068 | 1,018,947 | 44,889 | 4,010,904 |

52.     It is no wonder that given the extremely lucrative profits for themselves, the Board allowed the Company to be sold far under its proper value in order to secure a quick sale.

53.     Thus, while the Proposed Transaction is not in the best interests of Barnes & Noble' stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary 14D-9***

54.     On July 9, 2019, Barnes & Noble filed with the SEC a materially misleading and incomplete 14D-9 that failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning Barnes & Noble' Financial Projections*

55.     The 14D-9 fails to provide material information concerning financial projections provided by Barnes & Noble' management, reviewed with Barnes & Noble' and relied upon by Evercore and Guggenheim in their analyses.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

56.     The 14D-9 fails to disclose both Unlevered Free Cash Flows ("UFCF"), or the underlying line items associated therewith.

57.     Without accurate projection data presented in the 14D-9, Plaintiff and other stockholders of Barnes & Noble are unable to properly evaluate the Company's true worth, the accuracy of Evercore's or Guggenheim's financial analyses, or make an informed decision whether to tender their Company stock in the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

58.     Specifically, the 14D-9 fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the 14D-9 fails to disclose:

> a.   The specific facts and reasoning related to the reasons why the Company determined it necessary to retain both Evercore and Guggenheim; and related thereto, (i) the criteria or circumstances under which the Company will pay any additional "discretionary fee" to Evercore, and (ii) previous services provided by Guggenheim to the Company and Elliot and the amounts paid to Guggenheim for such services.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Evercore and Guggenheim*

59.     In the 14D-9, Evercore and Guggenheim describe their respective fairness opinions and the various valuation analyses performed to render such opinions.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

60.     For example, the 14D-9 does not disclose material details concerning the analyses performed by Evercore in connection with the Proposed Transaction, including (among other things):

a.  *Illustrative Net Present Value of Future Stock Price Analyses*:

With respect to Evercore's analysis, the 14D-9 fails to disclose:

i.   Estimated Debt and the number of fully diluted shares used by Evercore for the Company;

ii.  The specifics inputs and assumptions utilized to derive the discount rates of 11.5% to 12.5%.

b.  *Illustrative Discounted Cash Flow Analysis*

With respect to Evercore' *Illustrative Discounted Cash Flow Analysis*, the 14D-9 fails to disclose:

i.   UFCF and related line items;

ii.  Average Net Debt utilized;

iii. The specifics inputs and assumptions utilized to derive the discount rate range of 9.5%-10.5% used in the analysis;

iv.  The terminal values calculated;

v.   The basis for the applying terminal year EV to EBITDA multiples of 3.0x-4.0x and a perpetuity growth rate range of (3.0)% - 0.0%.

61.     Furthermore, the 14D-9 does not disclose material details concerning the analyses performed by Guggenheim in connection with the Proposed Transaction, including (among other things):

a.  *Discounted Cash Flow Analysis*

With respect to Guggenheim's *Discounted Cash Flow Analysis*, the 14D-9 fails to disclose:

    i.   The UFCF derived by Evercore if different from the UFCF derived by the Company Forecasts.

    ii.   How, if at all, Guggenheim utilized the Company's NOLs in this analysis.

    iii.   The specifics inputs and assumptions utilized to derive the discount rate range of 9.5%-10.5% used in the analysis.

    iv.   The terminal values calculated.

    v.   The basis for the applying a perpetuity growth rate range of 1.0%-2.5%.

    b.   *Selected Transactions Analysis*

With respect to Guggenheim's *Selected Transactions Analysis*, the 14D-9 fails to disclose:

    i.   The objective selection criteria and the observed transaction by transaction multiples and metrics examined.

    ii.   The individual transaction values for each of the selected transactions.

62.    Without the omitted information identified above, Barnes & Noble' public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests. Moreover, without the key financial information and related disclosures, Barnes & Noble' public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.

## FIRST COUNT

### Claim for Breach of Fiduciary Duties

### (Against the Individual Defendants)

63.    Plaintiff repeats all previous allegations as if set forth in full herein.

64.    The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiffs and the Company's public shareholders.

65.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Barnes & Noble.

66.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the shareholders of Barnes & Noble by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Barnes & Noble to its public shareholders.

67.     Indeed, Defendants have accepted an offer to sell Barnes & Noble at a price that fails to reflect the true value of the Company, thus depriving shareholders of the reasonable, fair and adequate value of their shares.

68.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed vote on whether to approve the Merger.

69.     The Individual Defendants dominate and control the business and corporate affairs of Barnes & Noble, and are in possession of private corporate information concerning Barnes & Noble's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Barnes & Noble which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing shareholder value.

70.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

71.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Barnes & Noble's assets and have been and will be prevented from obtaining a fair price for their common stock.

CLASS ACTION COMPLAINT

72.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

73.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

**SECOND COUNT**

**Violations of Section 14(e) of the Exchange Act**

**<u>(Against All Defendants)</u>**

74.     Plaintiff repeats all previous allegations as if set forth in full herein.

75.     Defendants have disseminated the 14D-9 with the intention of soliciting stockholders to tender their shares in favor of the Proposed Transaction.

76.     Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

77.      The 14D-9 was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the 14D-9 is materially misleading and omits material facts that are necessary to render them non-misleading.

78.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

79.     The Individual Defendants were at least negligent in filing a 14D-9 that was materially misleading and/or omitted material facts necessary to make the 14D-9 not misleading.

80.     The misrepresentations and omissions in the 14D-9 are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

**THIRD COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

81.     Plaintiff repeats all previous allegations as if set forth in full herein.

82.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the 14D-9 was materially misleading to Company stockholders.

83.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the 14D-9 and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the 14D-9.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the 14D-9 before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

84.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Barnes & Noble' business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information

available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the 14D-9 was misleading. As a result, the Individual Defendants are responsible for the accuracy of the 14D-9 and are therefore responsible and liable for the misrepresentations contained herein.

85.     The Individual Defendants acted as controlling persons of Barnes & Noble within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Barnes & Noble to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Barnes & Noble and all of its employees. As alleged above, Barnes & Noble is a primary violator of Section 14 of the Exchange Act and SEC Rule 14d-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and in favor of the Class, and against the Defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.     Enjoining the Proposed Transaction;

C.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.     Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.     Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best

possible consideration for Barnes & Noble and obtain a transaction which is in the best interests of Barnes & Noble and its shareholders;

F.      Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: July 22, 2019                    **BRODSKY & SMITH, LLC**

                                        _/s/ Evan J. Smith_
                                        Evan J. Smith
                                        240 Mineola Boulevard
                                        First Floor
                                        Mineola, NY 11501
                                        Telephone:      516.741.4977
                                        Facsimile:      516.741.0626
                                        esmith@brodskysmith.com

                                        _Attorneys for Plaintiff_

CLASS ACTION COMPLAINT